In the

 United States Court of Appeals
 For the Seventh Circuit
 ____________________

No. 21-2695
KOMATSU MINING CORP.,
 Plaintiff-Appellant,

 v.

COLUMBIA CASUALTY COMPANY and TRAVELERS CASUALTY
AND SURETY COMPANY OF AMERICA,
 Defendants-Appellees.
 ____________________

 Appeal from the United States District Court
 for the Eastern District of Wisconsin.
 No. 2:18-CV-02034 — Lynn Adelman, Judge.
 ____________________

 ARGUED DECEMBER 1, 2022 — DECIDED JANUARY 23, 2023
 ____________________

 Before EASTERBROOK, HAMILTON, and KIRSCH, Circuit
Judges.
 EASTERBROOK, Circuit Judge. A corporate control transac-
tion has led to an insurance dispute. In 2016 Joy Global Inc.,
and Komatsu America Corp., two manufacturers of heavy
equipment used in mining, agreed to merge. That step re-
quired the approval of Joy Global’s investors. As it had shares
registered under the federal securities laws, Joy Global sent
2 No. 21-2695

the investors a set of disclosures under §14 of the Securities
Exchange Act of 1934, 15 U.S.C. §78n, which regulates the pro-
cess of voting by proxy. Litigation ensued and was seZled for
roughly $21 million; the transaction closed. The surviving
ﬁrm is called Komatsu Mining. Who pays for the seZlement
remains unresolved.
 Several suits contended that Joy Global violated §14 and
the implementing regulations by not disclosing some internal
projections of Joy Global’s future growth that could have been
used to negotiate for a price higher than the one that Joy
Global agreed to accept. This rendered the proxy statements
fraudulent, plaintiﬀs asserted, by omiZing information neces-
sary to make the disclosures non-misleading. The complaints
added that Joy Global’s directors violated their duties as a
maZer of state law by not maximizing the price the sharehold-
ers stood to receive.
 Whether these complaints stated good federal claims was
never put to the test, but the maZer is doubtful. Santa Fe In-
dustries, Inc. v. Green, 430 U.S. 462 (1977), holds that securities
laws cannot be used to contend that a corporate transaction
did not fetch the best price; federal regulation is limited to dis-
closures, while price is a subject for appraisal and other rem-
edies under state law. One circuit allows Santa Fe Industries to
be skirted by pleading that §14 requires a corporation to dis-
close facts that could facilitate litigation about the price in
state court. See Goldberg v. Meridor, 567 F.2d 209 (2d Cir. 1977).
But this circuit has deprecated that approach and said that ar-
guments about price belong entirely under state law. See Har-
ris Trust & Savings Bank v. Ellis, 810 F.2d 700, 704 (7th Cir.
1987); O’Brien v. Continental Illinois National Bank & Trust, 593
F.2d 54 (7th Cir. 1979). Still, the seZlement stands whether or
No. 21-2695 3

not the complaints came within §14. We consider only
whether the $21 million is a loss covered by insurance.
 The policies in question address securities and state-law
suits, which the insurers must defend at their expense. But the
underwriters need not indemnify the insureds (directors and
oﬃcers as well as Joy Global) for “any amount of any judg-
ment or seZlement of any Inadequate Consideration Claim
other than Defense Costs”. In these policies, words and
phrases in boldface are deﬁned terms. The deﬁnition of “in-
adequate consideration claim” is:
 that part of any Claim alleging that the price or consideration paid
 or proposed to be paid for the acquisition or completion of the
 acquisition of all or substantially all the ownership interest in or
 assets of an entity is inadequate.

And a “claim” is:
 any civil, criminal, administrative or regulatory proceeding (other
 than an investigation) or arbitration, mediation or any alternative
 dispute resolution proceeding, … alleging a Wrongful Act, in-
 cluding any appeal therefrom.

The district court, applying Wisconsin law (which the parties
agree is appropriate), granted summary judgment to the in-
surers. 555 F. Supp. 3d 589 (E.D. Wis. 2021). The judge found
that the suits assert the wrongful act of failing to disclose doc-
uments that could have been used to seek a higher price. That
brought the suits within the deﬁnition of “inadequate consid-
eration claim” and activated the exclusion from indemniﬁca-
tion (though the insurers still had to cover defense costs).
 Consider why an insurance policy might exclude coverage
for “inadequate consideration”. How much a company is
worth depends on the market, but bidders would like to shift
the cost to a third party if possible. Suppose Company X is
4 No. 21-2695

worth $100 million. Company Y agrees to buy X for $80 mil-
lion and promises that X’s shareholders will be made whole.
The shareholders sue, contending that X has withheld the
“fact” that the company is worth $100 million. X and Y seZle
that claim for $20 million and turn to their insurer for indem-
nity. The shareholders get their $100 million, but if this ma-
neuver works Y completes the purchase for only $80 million,
with the rest coming from insurance. Insurers use clauses
about inadequate consideration to protect themselves from
this moral hazard. The hypothetical in this paragraph looks a
lot like the actual merger between Joy Global and Komatsu
America. But an inadequate-consideration clause means that
Y, not the insurer, pays the target’s full market value.
 Komatsu Mining’s principal argument on appeal is that
the securities suits could not have been about “inadequate con-
sideration”, because that’s governed by state law. Given Santa
Fe Industries, any §14 action necessarily alleges false or inade-
quate disclosure—and these suits did just that. But the reason
disclosure was inadequate, according to the complaints, is
that Joy Global failed to reveal that the price was too low. By
concealing information, the complaints maintained, the proxy
statements induced shareholders to vote in favor of a merger
whose price was not as advantageous as it could have been.
That’s an “inadequate consideration claim” under this pol-
icy’s deﬁnition.
 The contrary argument amounts to a contention that using
a §14 suit to get beZer access to information that could be em-
ployed to boost the price—either by voting against the merger
or by suing under state law—avoids not only Santa Fe Indus-
tries but also exclusions such as the ones in these policies. Sim-
ilarly, Komatsu Mining maintains, the fact that the suits
No. 21-2695 5

included claims that Joy Global’s directors had a duty to max-
imize the price paid diﬀers from the adequacy of the price it-
self. Yet the policies say that indemnity depends on both a
“wrongful act” and the absence of an “inadequate considera-
tion claim”. Under the policies, it is possible to have a viola-
tion of §14 or of a ﬁduciary duty—that is, a “wrongful act”—
that produces loss only if a court ﬁnds that the price was too
low. That’s the situation here. The federal claim was assert-
edly inadequate disclosure, and the state claim was the direc-
tors’ asserted breach of their duty of care, but the loss from
any legal wrong depended on a conclusion that the price of-
fered in the merger was too low. (Indeed, the existence of the
claim itself depends on price. For example, if Joy Global ne-
gotiated a good price, then failure to disclose the internal pro-
jections was not material and so was not a violation of §14.)
 We asked Komatsu Mining’s lawyer at oral argument
whether any of the complaints oﬀered a theory of liability that
did not depend on a view that the price oﬀered for the Joy
Global shares was too low. Counsel replied, in several diﬀer-
ent ways, that the federal claim depended on inadequate dis-
closures. But did it depend on false or deﬁcient disclosures
about anything other than the price? Counsel did not identify
any part of any complaint making such a claim, and our own
review did not turn one up. The only objection to this merger
was that Joy Global could and should have held out for more
money, and that revealing this would have induced the inves-
tors to vote “no” (or ﬁle suit in state court) and so trigger a
renegotiation of the price.
 Like the district court, we recognize that one state judge’s
decision supports the approach that Komatsu Mining pur-
sues. Northrop Grumman Innovation Systems, Inc. v. Zurich
6 No. 21-2695

American Insurance Co., 2021 Del. Super. LEXIS 92 (Feb. 2, 2021),
application for interlocutory review denied, 2021 Del. LEXIS
106 (Mar. 18, 2021), ﬁnds an inadequate-consideration exclu-
sion in a diﬀerent policy inapplicable because the claim rested
in part on inadequate disclosure. The judge of the Superior
Court wrote that such exclusions apply only when inadequate
price is the sole allegation in the underlying complaint. Any
other kind of allegation (including insuﬃcient disclosure)
nulliﬁes the exclusion, the state judge wrote.
 The state judge invoked what he understood to be a rule
of Delaware insurance law that all conceivable ambiguities be
construed against an insurer. But as the district judge pointed
out, 555 F. Supp. 3d at 595, that may be the law in Delaware
but is not the law in Wisconsin. See, e.g., Danbeck v. American
Family Mutual Insurance Co., 2001 WI 91 ¶10 (Sykes, J.). What’s
more, the language of the exclusion in Northrop Grumman dif-
fers from the deﬁnition of “inadequate consideration claim”
in Joy Global’s policies. Komatsu Mining wants us to proceed
as if all D&O policies contain the same language, but they
don’t, so we shouldn’t.
 Other arguments have been considered but do not require
discussion.
 AFFIRMED